UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

GARY W. RANDALL )
 )
v. ) NO. 2:08-CV-191
 )
DENNIS G. WESTMORELAND, M.D., )
and TRI-CITIES RADIOLOGY )
GROUP, P.C. )

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon plaintiff's Motion for a New Trial, [Doc. 69], pursuant to Federal Rule of Civil Procedure 59(a). *See* Fed. R. Civ. P. 59(a). On May 15, 2009, a jury found that the defendants were not liable for medical malpractice pursuant to Tennessee Code Annotated section 29-26-115(a). *See* Tenn. Code Ann. § 29-26-115(a).

The plaintiff first argues in his new trial motion that Defendant Westmoreland and one of his witnesses, Dr. Marino, deliberately violated the Court's Order that no witness could testify as to "what any other radiologists saw or did not see" by testifying that other radiologists at a meeting failed to identify the superior mesenteric vein thrombosis. The plaintiff claims that these violations prejudiced the jury in favor of the defendants. Second, the plaintiff argues that Dr. Westmoreland again violated the Court's order that the defendants were prohibited from arguing or

inferring that Dr. Westmoreland's retirement had been adversely affected by the filing of the lawsuit when he testified that he had planned on retiring before the case was filed but he was not happy about it. Again, the plaintiff argues that this was prejudicial. Third, the plaintiff similarly argues that defense counsel violated the Court's order that no party was to argue that a finding of liability would be "a black mark" on Dr. Westmoreland's career and prejudiced the jury when counsel argued in closing "that it would be wrong to brand Dr. Westmoreland with malpractice and award a judgment against him." Fourth, the plaintiff argues that the verdict was against the weight of the evidence.

The defendants argue that any violations of the Court's orders on the plaintiff's motions in limine would be harmless error. Last, the defendants argue that the verdict was reasonable and that this Court cannot reweigh the evidence and set aside the verdict merely because the jury could have drawn different inferences or conclusions.

The facts at trial demonstrated that plaintiff's expert, Dr. Chako, testified that Dr. Westmoreland properly noted the abnormality of the superior mesenteric vein in the arterial phase of the July 16 contrast studies and that he properly recognized that the abnormality was either a clot or a timing problem. Further, Dr. Chako testified that according to the standard of care, Dr. Westmoreland was required to

2

focus his attention on the superior mesenteric vein on the veinous phase to confirm whether the abnormality was a clot or timing problem. He further testified that the abnormality was a clot in the superior mesenteric vein. Dr. Chako also testified that the clot shown on the July 16 scan totally blocked the vein, that it remained unchanged, and that there was no evidence of blood flow in the lumen or the interior of the vein on the July 27, 2005 CT scan. He testified that radiology is not an exact science and that experienced radiologists may interpret scans differently.

Regarding the standard of care, Dr. Marino agreed that Dr. Westmoreland properly noted the abnormality of the superior mesenteric vein in the arterial phase of the July 16 contrast studies, that Dr. Westmoreland properly recognized that the abnormality was either a clot or a timing problem, that Dr. Westmoreland was required to focus his attention on the superior mesenteric vein on the veinous phase to confirm whether the abnormality was a clot or timing problem, and that the abnormality was a clot in the superior mesenteric vein. However, he testified positively that Dr. Westmoreland did not deviate from the standard of care.

Dr. Westmoreland testified positively that he did not deviate from the standard of care. He further testified that he was not focused on the superior mesenteric vein on the veinous phase of the contrast studies but analyzed several areas and that the abnormality that he saw in the vein on the arterial phase was a flow

3

problem. He admitted that he misevaluated the CT study, but again, he emphasized that this was a rare condition and that he did not deviate from the standard of care.

Regarding causation, Dr. Kennerly testified that the bowel wall on the July 16 scans revealed a thickened small bowel wall and that the plaintiff was a candidate for successful Heparin therapy on July 16. On the July 21 scan, it showed that most of the small bowel was edematous and that there was evidence of a build up of peritoneal fluid, a precursor to bowel necrosis. Also present on this scan were clots in the feeder veins, which were not present on the July 16 scan. He concluded that the bowel was at a greater risk of necrosis and perforation on July 21. Moreover, Dr. Kennerly testified that if Heparin therapy had begun on July 16, then it was more probable than not that the plaintiff would have had a 70 to 75 percent chance of not having to have surgery. Dr. Kennerly also testified that Heparin never dissolves clots, that the clot could have been present for several weeks before the plaintiff's first visit to the emergency room, and that portions of the small bowel were already thickened and there were changes to the mesentery when the plaintiff visited the emergency room on July 16. Dr. Kennerly conceded that Heparin therapy does not necessarily avoid bowel necrosis and the need for surgery. Finally, he also agreed that the plaintiff could have suffered bowel necrosis and perforation even if appropriately treated starting on July 16.

Dr. Brock testified that Heparin therapy may or may not have helped the plaintiff, that the plaintiff was in need of Heparin therapy on July 16, and that generally if Heparin therapy is started early there is a better medical outcome. He also testified that the clot formed prior to July 16, long enough to begin the process of ischemia. Dr. Brock further testified that the bowel was already edematous on July 16 and that Heparin therapy would not have opened the vein. The portion already affected on July 16 was significantly compromised and that segment may not have survived even with Heparin therapy.

The plaintiff's treating physician, Dr. Thomas, testified that the bowel had deteriorated from July 16 to July 21 and that the success of Heparin therapy depends upon the condition of the bowel when therapy is begun. The plaintiff's bowel was at greater risk of necrosis and perforation on July 21 than on July 16. However, he could not testify affirmatively that if Heparin therapy had been started on July 16 whether the bowel resection and surgery could have been avoided. The portion of the necrotic bowel that he removed was the same segment of bowel that was shown to be thickened on the CT scan when the plaintiff first came to the emergency room on July 16.

Federal Rule of Civil Procedure 59(a) states, "The court may, on motion, grant a new trial on all or some of the issues–and to any party–as follows: after a jury

trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a). "[A] new trial is warranted when a jury has reached a seriously erroneous result . . . ." *Strickland v. Owens Corning*, 142 F.3d 353, 357 (6th Cir. 1998). This is evidenced by: "(1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, *i.e.*, the proceedings being influenced by prejudice or bias. *Holmes v. City of Massillon*, 78 F.3d 1041, 1045-46 (6th Cir. 1996). In addition, Federal Rule of Civil Procedure 61 states, "Unless justice requires otherwise, no error in the admitting or excluding evidence–or any other error by the court or a party–is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order. At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights." Fed. R. Civ. P. 61. The harmless-error standard provides that if "one cannot say, with fair assurance, . . . that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected." *Mike's Train House, Inc. v. Lionel, L.L.C.*, 472 F.3d 398, 409-10 (6th Cir. 2006) (citing *DePew v. Anderson*, 311 F.3d 742, 751 (6th Cir.2002)). It is the plaintiff who must demonstrate that the verdict was substantially swayed by the error so as to affect his substantial rights.

Initially, this Court notes that the defendants argue that the plaintiff has waived his first three arguments for failure to object at trial and for failing to request a curative instruction or a mistrial. Without deciding whether or not the issues have been waived, this Court will address the arguments on the merits. For even if the plaintiff did not waive the issues, for the reasons set forth below, this Court FINDS that any error in these three instances was harmless.

Regarding the plaintiff's first argument, Dr. Marino testified that he "had seen the case before; and when he had originally looked at it, we didn't pick up the superior mesenteric vein thrombosis; so after the educational discussion and it was pointed out to us, I remembered the case; that's the point of these cases, it's hopefully learning from them; so the second time I saw it, I said, oh, I remember the case." Dr. Westmoreland testified, "I don't think I deviated from the, the standard. I admit that I misevaluated that clot, but let me tell you a lot of other people have too." Later he testified, "I know a lot of people that missed this, I maybe know a lot of people that have missed it." Regarding the plaintiff's second argument, Dr. Westmoreland testified something to the effect that he had been planning on retiring before this suit was filed but that he was not happy about it. Third, in closing argument, defense counsel argued "that it would be wrong to brand Dr. Westmoreland with malpractice and award a judgment against him."

7

Even considering all of this evidence in total, this Court cannot find upon examination of the entire record, substantial prejudice to the plaintiff. *See Morton Butler Timber Co. v. U.S.*, 91 F.2d 884, 890 (6th Cir. 1937). This Court FINDS that the plaintiff has failed to demonstrate that the judgment was substantially swayed by the error. *See Mike's Train House*, 472 F.3d at 409-10. Thus, it is impossible to conclude that substantial rights of the plaintiff were affected. Accordingly, plaintiff's motion on these three grounds is **DENIED.**

Last, regarding the sufficiency argument, a motion for a new trial may be granted if this Court determines that the verdict is clearly against the weight of the evidence. *J.C. Wyckoff & Assoc. v. Standard Fire Ins. Co.*, 936 F.2d 1474, 1487 (6th Cir. 1991). In considering a motion for a new trial on the ground that the verdict is against the weight of the evidence, this Court is not to set aside the verdict simply because it believes that another outcome is more justified. *TCP Indus., Inc. v. Uniroyal, Inc.*, 661 F.2d 542, 546 (6th Cir. 1981). This Court is to accept the jury's verdict "if it is one which reasonably could have been reached." *Duncan v. Duncan*, 377 F.2d 49, 52 (6th Cir.1967). "'[C]ourts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable.'" *Id.* (citation omitted).

In order to prevail in this case, the plaintiff was required to prove all three elements: (1) the standard of care; (2) the deviation from the standard of care; and (3) the proximate result of the deviation was that the plaintiff suffered injuries which would not have otherwise occurred. *See* Tenn. Code Ann. § 29-26-115. Elements two and three were sharply disputed at trial. From the evidence presented at trial, this Court FINDS that a reasonable jury could have reached the very conclusion that it did. Doctor Westmoreland and Dr. Marino both testified that Dr. Westmoreland did not deviate from the standard of care. He described the thickened bowel wall and noticed the abnormality in the superior mesenteric vein, although he misevaluated that as a flow phenomenon. Radiology is not an exact science and different radiologist may interpret the same scan differently. The jury could have reasonably concluded and did conclude that Dr. Westmoreland did not deviate from the standard of care.

In addition, the testimony established that the plaintiff developed the clot prior to his July 16 emergency room visit. A portion of his bowel was affected because of the clot, Heparin therapy does not dissolve clots, and the same portion of the bowel that was affected on July 16 was the same portion which Dr. Thomas removed. Further the testimony established that beginning Heparin therapy on July 16 may not necessarily have prevented the perforation and the removal of the affected bowel. The jury's verdict was reasonable.

9

For the reasons set forth above, this Court **FINDS** that a new trial is not warranted. Accordingly, it is hereby **ORDERED** that the plaintiff's motion, [Doc. 69], is **DENIED**.

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE

10